**NEEDVILLE COTTON WAREHOUSE,
INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.**

No. 87–4721
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 20, 1988.

Merrick C. Walton, Houston, Tex., for petitioner.

Hugh L. McCulley, Elaine L. Lawson, Houston, Tex., for intervenor Southern Pacific Trans. Co.

Robert S. Burk, Gen. Counsel, ICC, Michael Martin, Atty., Edwin Meese, III, Atty. Gen., Marion L. Jetton, Atty., John J. Powers, III, Atty., U.S. Dept. of Justice, Appellate Sec., Washington, D.C., for respondents.

Before GEE, GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant, Needville Cotton Warehouse, Inc. (Needville), appeals the Interstate Commerce Commission's (ICC) dismissal of its petition to reopen the proceeding on a rail line abandonment exemption granted to the Southern Pacific Transportation Company (Southern). We affirm the ICC's decision.

## BACKGROUND

In 1985, the ICC granted Southern permission to discontinue service over the Guy Branch rail line in Fort Bend County, Texas, over Needville's objection. Southern had not sought abandonment of the line at that time, because it had perceived the potential for future industrial growth along the line sufficient to make rail service economically feasible. However, Southern apparently gave up hope for the line in 1986 when it requested the ICC to grant it an exemption from the normal abandonment requirements and allow for an expedited abandonment. Southern argued that an exemption was appropriate, because the expense of the formal abandonment proceedings provided in 49 U.S.C. §§ 10903–4 would not serve a useful function as the issues which would likely arise under such proceedings would likely be the same as had been recently addressed in the cessation of service proceeding less than two years earlier. In addition, Southern sought expedited abandonment so that it could sell the right-of-way along the rail line to a public utility which required consummation of the sale before the end of that calendar year.

The ICC agreed with Southern's contentions and granted the exemption. The ICC reasoned that the exemption would minimize the administrative expense of abandoning the line and encourage efficient rail management. Moreover, shippers would not be hurt since the line was unused and the development of new business along the line is unlikely. Pursuant to the ICC's procedures for granting exemptions under 49 U.S.C. § 10505, notice of the exemption was published in the Federal Register on December 24, 1986, three days before the exemption's effective date.

Petitions to reopen the exemption proceeding were due as of January 13, 1987. Needville, however, did not file its petition until February 17, 1987. The thrust of Needville's complaint is that it lacked notice of the abandonment proceeding. The ICC held that while the petition to reopen was filed late, Needville's lack of actual notice served as sufficient reason to waive compliance with the deadline for filing petitions to reopen. However, on the merits, the ICC also held that the lack of notice to Needville of the abandonment proceeding did not justify reopening that proceeding.

## DISCUSSION

Once the ICC authorizes an abandonment, it loses jurisdiction over that rail line. *Hayfield Northern R. v. Chicago and N.W. Transp.*, 467 U.S. 622, 633, 104 S.Ct. 2610, 2617, 81 L.Ed.2d 527 (1984). The principal exceptions to this rule made by the ICC are where there is a timely petition to reopen or fraud, misrepresentation, mistake or ministerial error affected the abandonment. *S.R. Investors, Ltd. Abandonment in Tuolomme County*, Interstate Commerce Commission Decision (Docket No. AB–239X) July 14, 1987 and January 20, 1988. The ICC's interpretation is entitled to considerable deference, *Hayfield*, 104 S.Ct. at 2618.

Needville has asserted, at least implicitly, that Southern acted fraudulently by filing for the exemption without person-

ally noticing Needville, since Needville had opposed the cessation of service. Needville's only interest in the line was the hope that service to the line might eventually be restored. Failure to notify a party with such an interest does not constitute fraud, particularly in a case like this one where the ICC did not even deem Needville's interest sufficient to require Southern to notice Needville as is the ICC's practice for interested parties in exemption cases.

■ Even if the decision is reviewed on the merits, however, Needville can not prevail. Section 10505 requires the ICC to exempt transactions from normal regulatory requirements where: (1) ICC regulation is not necessary to carry out the rail transportation policy as provided in 49 U.S. C. § 10101a and (2) the transaction or service involved is of limited scope.[1] This provision is a cornerstone of the Staggers Rail Act designed to encourage exemptions from burdensome regulation wherever such regulations are found unnecessary. *See CMC Real Estate Corp. v. ICC*, 807 F.2d 1025, 1031 (D.C.Cir.1986). The abandonment exemption in this case involved less than 16 miles of track on which service had ceased; thus, there can be no contention that the transaction involved in this case was not of a limited scope. Rather, Needville argues that the grant of the exemption from the formal notice requirement was inconsistent with the rail transportation policy outlined in § 10101a. We review the ICC's decision to grant the exemption under the abuse of discretion standard. 5 U.S.C. § 706(2)(A). Under this standard,

> The ICC need only make a showing that "all relevant factors were considered and that the Commission has articulated a rational connection between the facts as it finds them and the conclusion it premises on those facts." ... Our task is to

examine the record to determine whether there are facts capable of sustaining the agency's findings.

*CMC Real Estate Corp. v. ICC*, 807 F.2d 1025, 1030 (D.C.Cir.1986) (citations omitted).

■ Among the rail transportation policy goals enunciated in § 10101a is that of minimizing the need for federal regulatory control over the rail transportation system and requiring fair and expeditious regulatory decisions when regulation is required. Another statutory goal is to reduce regulatory barriers for entry into and exit from the industry. The ICC's grant of the exemption in this case is manifestly consistent with these policy goals. Needville argues that the ICC's consideration of the public utility's desire to complete the abandonment expeditiously was improper. However, such consideration is entirely consistent with the policy goal of reducing regulatory barriers to exit from the industry. Conversely, Needville does not cite any of the goals enunciated in § 10101a as being inconsistent with the ICC's action. Thus, we conclude that the ICC has not abused its broad discretion over this matter.

■ Needville also contends that the absence of personal notice served upon it prior to the ICC's decision granting the exemption violated the due process requirement of the Constitution. This argument has no merit. "A prerequisite for due process protection is some interest worthy of protecting ..." *American Association of Exporters and Importers v. United States*, 751 F.2d 1239, 1250 (Fed.Cir.1985). In *American Association of Exporters and Importers*, the plaintiff was a trade association in the textile importing and exporting business. The association chal-

---

**1.** 49 U.S.C. § 10505(a) states: Under this standard,

In a matter related to a rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under this subchapter, the Commission shall exempt a person, class of persons, or a transaction or service when the Commission finds that the application of a provision of this subtitle—

(1) is not necessary to carry out the transportation policy of section 10101a of this title; and

(2) either (A) the transaction or service is of limited scope, or (B) the application of a provision of this subtitle is not needed to protect shippers from the abuse of market power.

lenged the action of an administrative agency imposing quotas on imported textiles pursuant to the Multi-Fiber Arrangement. The trade association contended that the quotas irreparably harmed its members through additional costs, delays, embargoes and disruption of orders subject to irrevocable letters of credit. This court, however, held that the mere subjective expectation of a future business transaction does not rise to the level of an interest worthy of constitutional protection. *Id.*

In the present case, Needville did not have a justifiable expectation of future rail service. Service had been suspended for more than a year before Southern petitioned for expedited abandonment, and Needville has provided no evidence indicating that conditions would warrant the reestablishment of rail service in the forseeable future. Even when Southern still served the Guy Branch line, Needville transported only 3% of its products by rail and the rest primarily by truck.

For these reasons, the ICC's decision is AFFIRMED.